UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JEREMY GREENE,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**SCORES HOLDING COMPANY, INC, SCORES MEDIA GROUP, LLC, SWAN MEDIA GROUP, INC., SCORES DIGITAL GAMING, LLC, ROBERT GANS, CHARILAOS YIOVES a/k/a HARRY YIOVES,**<br><br>        **Defendants.** | Case No.: |

Plaintiff JEREMY GREENE ("Plaintiff"), by his attorneys, **DOUGLAS & LONDON, P.C.**, upon information and belief, at all times hereinafter mentioned, alleges as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy as to the Plaintiff exceeds $75,000.00, exclusive of interest and costs, and because Defendants are domiciled, incorporated and have their principal places of business in states other than the state in which the named Plaintiff resides.

## NATURE OF THE CASE

2.    This action concerns and arises out of economic injuries and other damages Plaintiff, JEREMY GREENE, sustained, and continues to sustain, as a result of Defendants' unlawful actions as set forth herein which deprived Plaintiff JEREMY GREENE of the consideration he was promised in return for his years-long work for the "SCORES" brand.

3.    Plaintiff seeks damages as against each and every Defendant for breach of contract, unjust enrichment, promissory estoppel, fraudulent inducement and breach of the covenant of good faith and fair dealing.

## PARTIES

4.      Plaintiff, JEREMY GREENE, is a citizen of the United States of America, and is a citizen and resident of the state of Florida.

5.      Defendants Scores Holding Company Inc., Defendant Scores Media LLC, Inc, Swan Media Group, and Scores Digital Gaming (hereinafter referred to as "Corporate Defendants") are interrelated and unified.

6.      Defendant Scores Holding Company, Inc., (hereinafter referred to as "Scores Holding") is a corporation organized under the laws of the state of Utah, is registered to do business in New York, and has a principal place of business at 533-535 West 27th Street, New York, New York.

7.      Defendant Scores Holding is the owner of the tradename "Scores," the "Scores" brand, the "Scores" trademark, and owns all intellectual property rights related to same.

8.      Defendant Scores Holding does business under the name "Scores."

9.      For more than 20 years, the trademark "Scores" has been used to identify and distinguish the services of goods of gentleman's nightclubs with adult entertainment.

10.     Defendant Scores Holding is the licensor of the tradename "Scores."

11.     Defendant Scores Holding licenses the tradename "Scores" to its wholly owned subsidiary, Scores Licensing Corporation ("SLC").

12.     Upon information and belief, Defendant Scores Media Group, LLC ("Scores Media") is a limited liability company whose members are citizens of New York and Utah.

13.     Defendant Scores Media is located at 535 West 27th Street, New York, New York.

14.     Defendant Scores Media is an authorized user of the trademark "Scores."

15.     Defendant Swan Media Group, Inc., (hereinafter referred to as "SMG") is a domestic business corporation organized under the laws of New York and has a principal place of business at 617 11th Avenue, New York, New York.

16.     Defendant SMG is the owner of an online streaming interactive video service and associated website known as ScoresLive.com.

17.     Defendant SMG is an authorized user of the trademark "Scores."

18.     Despite Defendant SMG being the owner of ScoresLive.com, Defendant Scores Media Group holds itself out as the world's first online gentleman's club and claims responsibility, oversight and management of ScoresLive.com.

19.     Defendant Scores Digital Gaming, LLC (hereinafter referred to as "SDG") is a domestic limited liability company organized under the laws of New York and with a registered address at 617 11th Avenue, New York, New York, 10036.

20.     Upon information and belief, SDG's members are citizens of Utah and New York.

21.     Defendant SDG is an authorized user of the trademark "Scores."

22.     Defendant Robert Gans is a citizen of the United States of America and is a citizen of the state of New York.

23.     At all relevant times, Defendant Robert Gans was the Chief Executive Officer of Defendant Scores Holding.

24.     At all relevant times, Defendant Robert Gans was the President of Scores Media.

25.     At all relevant times, Defendant Robert Gans was the Chief Executive Officer and/or President of Defendant SMG.

26.     At all relevant times, Defendant Robert Gans owned 80% of Defendant SMG.

27.     At all relevant times, Defendant Robert Gans was the President of SDG.

28.     Defendant Charilaos Yioves a/k/a/ Harry Yioves ("Harry Yioves") is a citizen of the United States of America and is a citizen of the state of New York.

29.     At all relevant times, Defendant Harry Yioves was an employee of Defendant Robert Gans.

30.     At all relevant times, Defendant Harry Yioves was an agent of Defendant Robert Gans.

31.     At all times relevant herein, Defendant Harry Yioves had express and apparent authority to act on behalf of Defendant Robert Gans.

32.     At all relevant times, Defendant Harry Yioves was an employee of the Corporate Defendants.

33.     At all relevant times, Defendant Harry Yioves was an agent of each of the Corporate Defendants.

34.     At all times relevant herein, Defendant Harry Yioves had express and apparent authority to act on behalf of each of the Corporate Defendants.

35.     At all times relevant herein, Defendant Harry Yioves held himself out as having the authority to act on behalf of each of the Corporate Defendants.

36.     Defendant Harry Yioves is an operator of the Corporate Defendants, and he is responsible for all aspects of day-to-day business operations of each Corporate Defendant.

37.     At all relevant times, Defendant Harry Yioves was the Chief Executive Officer and/or Founder of Defendant Scores Media.

38.     At all relevant times, Defendant Harry Yioves was the Chief Executive Officer and/or President of Defendant SMG.

39.     At all relevant times, Defendant Harry Yioves was the Chief Executive Officer and/or President of Defendant SDG.

40.     At all relevant times, Defendant Harry Yioves held himself out as the Chief Executive Officer and/or Founder of Defendant Scores Media.

41.     At all relevant times, Defendant Harry Yioves held himself out as the Chief Executive Officer and/or Founder of Defendant SMG.

42.     At all relevant times, Defendant Harry Yioves held himself out as the Chief Executive Officer and/or Founder of Defendant SDG.

43.     At all times relevant to this action, Defendant Robert Gans exerted exclusive and complete domination and control over each Corporate Defendant.

44.     At all times relevant to this action, Defendant Harry Yioves exerted exclusive and complete domination and control over each Corporate Defendant.

45.     At all times relevant to this action, Defendant Scores Holding exerted exclusive and complete domination and control over each and every other Corporate Defendant.

46.     At all times relevant to this action, Defendant Robert Gans was able to exert exclusive and complete domination and control over each and every Corporate Defendant through shell corporations, including but not limited to Defendant Scores Holding.

47.     At all times relevant to this action, Defendant Harry Yioves was able to exert exclusive and complete domination and control over each and every Corporate Defendant through shell corporations, including but not limited to Defendant Scores Holding.

48.     On multiple occasions, Defendant Harry Yioves told Plaintiff Jeremy Scores that Defendant Scores Holding was a shell corporation for himself and Defendant Robert Gans.

49.     At all times relevant to this action, Defendants Robert Gans and/or Harry Yioves exerted exclusive and complete domination and control over each breached transaction and/or unlawful act at issue so that the acts of each and every Corporate Defendant are also the acts of Defendants Robert Gans and/or Harry Yioves.

50.     At all times relevant to this action, Defendant Scores Holding exerted exclusive and complete domination and control over each breached transaction and/or unlawful act at issue so that the acts each and every Corporate Defendant are also the acts of Defendant Scores Holding.

51.     Upon information and belief, Defendants Robert Gans and/or Harry Yioves created, set up and/or otherwise developed each and every one of the Corporate Defendants in an attempt to escape liability for their unlawful activity, such as the unlawful conduct alleged herein.

52.     Allowing for the continued adherence to the fiction of the separate existences of the "Corporate Defendants"  would promote injustice, in that Defendants Robert Gans and/or Harry Yioves are attempting to escape liability for their unlawful activity, as set forth below, by hiding behind various corporate forms to avoid responsibility for breach agreements entered into with Plaintiff for their own benefit.

## **FACTUAL BACKGROUND**

53.     Plaintiff has been involved with internet marketing and sales for many years.

54.     In the course of his career, Plaintiff developed a substantial network.

55.     Plaintiff established strong connections with prominent individuals involved in the technology, investment, financial and business industries.

56.     Plaintiff also established strong connections with entrepreneurs, investors and broker-dealers in the technology and social media industries.

57.     Plaintiff has valuable contacts with investors in both the financial and technology industries throughout the United States.

58.     Defendants induced Plaintiff to use his unique skillset to garner business for the "SCORES" brand in return for agreed-upon compensation.

59.     As detailed below, Plaintiff contributed to Defendants' financial success in promoting new business.

60.     Defendants profited handsomely from Plaintiff's services for the "SCORES" brand.

### *ScoresLive.com*

61.     Plaintiff Jeremy Greene's business relationship with Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves began in or about 2012, when he entered into a consultancy contract with them related to ScoresLive.com (the "Scores Consultancy Agreement").

62.     Plaintiff has been involved with internet marketing and sales for many years, and, by the terms of the contract, Plaintiff was to provide his "unique expertise" to Defendants, particularly Defendant SMG, identified as "Scores."

63.     In return, pursuant to the terms of the Scores Consultancy Agreement, Plaintiff Jeremy Greene was to receive: (1) a $10,000.00 monthly draw; and (2) quarterly share payments of 15% of Defendants' net revenue from the leads generated by Plaintiff provided that the net revenue was greater than $30,000.00 per quarter.  Termination of the agreement required 15 days prior written notice. Upon termination of the agreement, the $10,000.00 monthly draw payments would cease immediately, but the 15% share payments from leads originally generated by Jeremy would remain in force for three years post termination.

64.    Plaintiff Jeremy Greene began receiving $10,000.00 monthly payments shortly after the Scores Consultancy Agreement was affected.

65.    In or about September 2014, Defendants, without providing the required written notice of termination, stopped paying Plaintiff Jeremy Greene the contracted $10,000.00 per month.

66.    To date, Plaintiff Jeremy Greene has never received quarterly share payments of 15% of Defendant net revenue from the leads he generated (provided that the net revenue was greater than $30,000.00 per quarter) which he was entitled to up until September 2017.

67.    Defendants claim that Defendant SMG never earned a profit.  However, profit is not the same things as net revenue.

68.     Upon information and belief, Defendant SMG is abusing the corporate form to avoid payment of amounts due to Plaintiff under the terms of the Scores Consultancy Agreement.

69.    Defendant Robert Gans, Defendant Harry Yioves and Defendant Scores Holding, through and by its authorized agent Defendant Harry Yioves, dominated Defendant SMG and the Consultancy Agreement to such an extent that Defendant SMG's breach of the Consultancy Agreement as set forth in this Complaint is also the breach of Defendant Robert Gans, Defendant Harry Yioves and Defendant Scores Holding.

70.    Pre-discovery factual evidence of the aforementioned domination includes, but is not limited to, the following abuses of corporate form and control over the Consultancy Agreement:

     a.    Defendant SMG is undercapitalized;

     b.    According to Defendants, Defendant SMG was never profitable so there was no share owed to Plaintiff;

c.      There is an overlap in the ownership, officers, directors, and personnel of SMG with that of Defendant Scores Holding;

d.      Per the Scores Consultancy Contract, Defendant SMG is referred to as "Scores";

e.      Defendant Robert Gans is Chief Executive Officer of Defendant Scores Holding with an address of 533-535 West 27th Street 2nd Floor, New York, NY 10001;

f.      Defendant Robert Gans owns over 60% percent of Defendant Scores Holdings' shares, either individually or through his wholly owned company, Mitchell's East, LLC.;

g.      Defendant Robert Gans is the Chief Executive Officer and/or President of Defendant SMG with an address of 617 11th Avenue, New York, NY 10036;

h.      At all relevant times, Defendant Robert Gans owned 80% of Defendant SMG;

i.      At all relevant times, Defendant Robert Gans was president of Scores Media;

j.      At all relevant times, Harry Yioves was an employee of Defendant Scores Holding;

k.      At all relevant times, Harry Yioves was an agent of Defendant Scores Holding;

l.      At all times relevant herein, Harry Yioves had express and apparent authority to act on behalf of Defendant Scores Holding;

m.      At all times relevant herein, Harry Yioves represented that he had express and apparent authority to act on behalf of Defendant Scores Holding;

n.      At all relevant times, Defendant Robert Gans was president of Scores Media;

o.      At all relevant times, Defendant Harry Yioves was Chief Executive Officer and Founder of Scores Media;

p.      At all relevant times, Defendant Scores Media claimed responsibility, oversight and management of ScoresLive.com;

q.     The terms of the Scores Consultancy Agreement were negotiated between Plaintiff and Defendant Harry Yioves, who, at all times, was acting as employee and/or agent of Defendants Scores Holding, Scores Media, SMG and/or Robert Gans;

r.     Defendant Robert Gans signed the Consultancy Agreement, as CEO of Defendant SMG;

s.     Payments and guarantees of debts have been effectuated between SMG and Scores Holding:

t.     Upon information and belief, on January 24, 2006, Defendant Scores Holding entered into a licensing agreement with AYA International, Inc. ("AYA") in which it granted AYA the right to use its "Scores" trademark in connection with its online video chat website, ScoresLive.com.

u.     The licensing agreement with AYA provided for royalty payments to be made directly to Defendant Scores Holding at a rate of 4.99% of weekly gross revenues from all revenue sources within the AYA website;

v.     ScoresLive.com piloted in January 2007.

w.     On December 21, 2009, AYA transferred all of its rights in ScoresLive.com and in its licensing agreement with Defendant Scores Holding to Defendant SMG;

x.     In 2014, the ScoresLive.com license accounted for 5% of Defendant Scores Holding's total revenue; and

y.     In 2015, the ScoresLive.com license accounted for 1% of Defendant Scores Holding's total revenue.

71.    Upon information and belief, the Defendants have acted in bad faith by breaching their contract with Plaintiff and for refusing to pay Plaintiff the compensation he earned and was contracted to receive.

72.    Additionally, Defendants failed to pay the affiliates found by Plaintiff Jeremey Greene as agreed and in the time period agreed upon which substantially impacted Plaintiff's relationship with the affiliates.

73.     Defendants failure to pay the affiliates found by Plaintiff Jeremey Greene as agreed and in the time period agreed upon has caused Plaintiff to suffer loss profits and opportunities with these same affiliates and has negatively impacted his relationship with the affiliates significantly.

74.     Plaintiff Jeremy Greene, through a representative asked Defendants for a copy of their financial statement, which Defendants would not provide.

75.     In this action, Plaintiff seeks to recover compensation for the efforts he expended and the related damages he has suffered.

### *ScoresCasino.com*

76.     Plaintiff Jeremy Greene's business relationship with Defendants Scores Holding, Robert Gans and/or Harry Yioves continued when Defendants induced and enlisted Plaintiff to identify potential investors for its "Scores Casino" (also referred to as "ScoresCasino.com") project.

77.     Similar to their ScoresLives.com scheme, Defendants Scores Holding, Robert Gans and/or Harry Yioves created a sham corporate form, Scores Digital Gaming LLC, for its Scores Casino project.

78.     In or about January 2016, Defendant Harry Yioves approached Plaintiff regarding an online casino/gaming business opportunity.

79.     Defendant Harry Yioves was acting on his own behalf, on behalf of Defendant at Robert Gans and on behalf of Scores Holding.

80.     Defendants Scores Holding, Robert Gans and/or Harry Yioves recognized that Plaintiff had amassed valuable connections in the technology and investment industries.

81.     Defendant Harry Yioves and Defendants Scores Holding and Robert Gans, through their agent/employee Defendant Harry Yioves, asked Plaintiff to become part of the ScoresCasino.com business.

82.     Defendant Harry Yioves and Defendants Scores Holding and Robert Gans, through their agent/employee Defendant Harry Yioves, told Plaintiff that this online casino/gaming business was going to be part of the Scores brand.

83.     The trademark "Scores" is found on the ScoresCasino.com website.

84.     On January 15, 2016, Defendant Harry Yioves and Defendants Scores Holding and Robert Gans, through their agent/employee Defendant Harry Yioves, offered Plaintiff an opportunity to work for the Scores brand:

> I'm not looking to be the traffic guy. So rather have you there dealing with this and you can run with it. I will also cut you in on the preferred stock shares.

85.     On February 8, 2016, Defendant Harry Yioves and Defendants Scores Holding and Robert Gans, through their agent/employee Defendant Harry Yioves, followed-up with Plaintiff on the January 15th offer stating:

> What about this deal? I'm about to get real $$$ and put all these together ill bring you back when that happens and have you run things on both and get you the stock options its my promise.

86.     Plaintiff and Defendant Harry Yioves and Defendants Scores Holding and Robert Gans, through their agent/employee Defendant Harry Yioves, discussed ScoresCasino.com through multiple communication platforms including, but not limited to, skype chats, text messaging, emails and telephone calls.

87.     Defendant Harry Yioves and Defendants Scores Holding and Robert Gans, through their agent/employee Defendant Harry Yioves, represented to Plaintiff that Harry Yioves was working for and on behalf of Robert Gans and Scores to procure investors in ScoresCasino.com.

88.     Defendant Harry Yioves and Defendants Scores Holding and Robert Gans, through their agent/employee Defendant Harry Yioves, told Plaintiff that they were seeking both monetary and internet traffic investors in ScoresCasino.com.

89.     Plaintiff agreed to work for Defendants Harry Yioves, Robert Gans, Scores Holding and SDG for the benefit of ScoresCasino.com by procuring investors for same.

90.     In agreeing to work for Defendants Harry Yioves, Robert Gans, Scores Holding and SDG for the benefit of ScoresCasino.com by procuring investors for same, Plaintiff was promised a job as a salaried employee at ScoresCasino.com website, preferred stock shares and company equity.

91.     Over the following 21 months, Plaintiff spent hundreds of hours of his time, and his resources, targeting and developing potential investors.

92.     During this time period, Plaintiff expended funds from his own pocket to target and develop potential investors because Defendant Harry Yioves and Defendants Scores Holding, SDG and Robert Gans, through their agent/employee Defendant Harry Yioves, promised that they would reimburse him for out-of-pocket expenses.

93.     Defendants Harry Yioves, Robert Gans, Scores Holding and SDG relied on Plaintiff's unique expertise to further the success of the ScoresCasino.com business.

94.     For example, on September 25, 2017, Defendant Harry Yioves and Defendants Scores Holding, SDG and Robert Gans, through their agent/employee Defendant Harry Yioves, asked Plaintiff what the "next step" should be for the business.

95.     Defendant Harry Yioves and Defendants Scores Holding, SDG and Robert Gans, through their agent/employee Defendant Harry Yioves, instructed Plaintiff to communicate and "pitch" deals with potential investors on behalf of ScoresCasino.com

96.     After Plaintiff negotiated with potential investors for months, Defendant Harry Yioves and Defendants Scores Holding, SDG and Robert Gans, through their agent/employee Defendant Harry Yioves, came in to "close the deal."

97.     Throughout this period, Defendant Harry Yioves and Defendants Scores Holding, SDG and Robert Gans, through their agent/employee Defendant Harry Yioves, assured Plaintiff over 35 separate times that Plaintiff would be compensated for any investors he brought to ScoresCasino.com.

98.     For example, on August 8, 2017, Defendant Harry Yioves and Defendants Scores Holding, SDG and Robert Gans, through their agent/employee Defendant Harry Yioves, guaranteed Plaintiff, "We have a huge opportunity to make real money."

99.     Throughout the relevant time period, the compensation promised to Plaintiff by Defendant Harry Yioves and Defendants Scores Holding, SDG and Robert Gans, through their agent/employee Defendant Harry Yioves, included, but was not limited to, preferred stock shares, company equity and starting him as a salaried employee at Scores Casino.

100.     Defendant Harry Yioves and Defendants Scores Holding, SDG and Robert Gans, through their agent/employee Defendant Harry Yioves, promised Plaintiff that Scores was "factoring in your cut."

101.     In or about June 2016, in furtherance of procuring investors for ScoresCasino.com, Plaintiff began working and grooming MonsterAds as a potential investor.

102.    Thereafter, Plaintiff introduced MonsterAds to the Defendants Harry Yioves, Robert Gans, Scores Holding and SDG.

103.    In or about December 2017, MonsterAds signed an operating agreement with the Defendants Harry Yioves, Robert Gans, Scores Holding and SDG in which MonsterAds retained a 10% ownership stake in ScoresCasino.com in exchange for $1 million worth of internet traffic.

104.    The business deal with MonsterAds was a direct result of Plaintiff's many hours spent working to procure investors in ScoresCasino.com.

105.    In or about August 2016, in furtherance of procuring investors for ScoresCasino.com, Plaintiff began working and grooming Mr. Moser as a potential investor.

106.    Thereafter, Plaintiff introduced Mr. Moser to Defendants Harry Yioves, Robert Gans, Scores Holding and SDG.

107.    In or about December 2017, Mr. Moser signed an operating agreement with the Defendants Harry Yioves, Robert Gans, Scores Holding and SDG in which Mr. Moser retained a 10% ownership stake in ScoresCasino.com in exchange for $1 million worth of internet traffic.

108.    The business deal with Mr. Moser was a direct result of Plaintiff's many hours spent working to procure investors in ScoresCasino.com.

109.    Despite promising Plaintiff compensation for the work he performed at procuring MonsterAds and Mr. Moser, compensation which included, but was not limited to, a salaried employment position at ScoresCasino.com, preferred stock shares and company equity, Plaintiff has not received any of the promised compensation from Defendants Harry Yioves, Robert Gans, Scores Holding and SDG.

110.    Upon information and belief, Defendants Harry Yioves, Robert Gans, Scores Holding and SDG fraudulently promised compensation to Plaintiff without the intent to actually compensate him.

111.    Upon information and belief, Plaintiff's work directly contributed to the success of the ScoresCasino.com brand for the personal benefit of Defendants Harry Yioves, Robert Gans, Scores Holding and SDG.

112.    Representatives of MonsterAds and Mr. Moser have told Defendant Harry Yioves and Defendants Scores Holding, SDG and Robert Gans, through their agent/employee Defendant Harry Yioves, that Defendants Harry Yioves, Robert Gans, Scores Holding and SDG need to provide Plaintiff with the compensation that he was promised.

113.    Defendant Harry Yioves and Defendants Scores Holding, SDG and Robert Gans, through their agent/employee Defendant Harry Yioves, repeatedly induced Plaintiff to continue working for ScoresCasino.com by assuring Plaintiff that the ScoresCasino.com brand was and would be profitable.

114.    On October 26, 2017, Defendant Harry Yioves and Defendants Scores Holding, SDG and Robert Gans, through their agent/employee Defendant Harry Yioves, wrote to Plaintiff: [M]oney will be so easy to get right now."

115.    Upon information and belief, Defendants Harry Yioves, Robert Gans, Scores Holding and SDG promised compensation to Plaintiff in bad faith because Defendants Harry Yioves, Robert Gans, Scores Holding and SDG did not wish to provide Plaintiff with what had been promised.

116.    Upon information and belief, Defendant SDG is merely an alter ego designed by Defendants Harry Yioves, Robert Gans and Scores Holding to commit acts in bad faith without personal repercussions for the breach of the agreement with Plaintiff.

117.    Defendant Harry Yioves expressly acknowledged to Plaintiff in writing and orally that Defendant Robert Gans created certain corporate instrumentalities for the purposes of receiving profit without personal liability.

118.    To illustrate, on November 29, 2016, Harry Yioves wrote to Plaintiff:

> "We can make a big score on this. We have a shell company right now. 1 cent a share." … "You can get 1 mil shares for nothing. When we put the casino i[n] the holding company it goes to 1 dollar. You make 99 times your money."

119.    Additionally, on December 12, 2016, Defendant Harry Yioves wrote to Plaintiff, "Yea I think we have a good team." … "Plus a public shell that [B]ob owns outright."

120.    Additional pre-discovery factual evidence of Defendants Harry Yioves, Robert Gans and Scores Holding domination includes, but is not limited to, the following abuses of corporate form and control over SDG and the agreement with Plaintiff:

a.  There is an overlap in the ownership, officers, directors, and personnel of SDG with that of Defendants Harry Yioves, Robert Gans and Scores Holding;

b.  Defendant Robert Gans is the registered Principal of Defendant SDG;

c.  Defendant Robert Gans controlled business decisions of purported SDG corporation;

d.  Defendant Robert Gans and Harry Yioves controlled the business decisions of SDG;

e.  Defendant Robert Gans determined the timeline of the project and the deadline for investors to commit to ScoresCasino.com;

    f.    On August 3, 2017, Defendant Harry Yioves relayed a message from Defendant Robert Gans to Plaintiff about project deadlines.  "Bob just said by next week he wants to wrap up. Either way he said.";

    g.    On August 4, 2017, Defendant Harry Yioves again represented that Defendant Robert Gans had instructed Plaintiff to finalize plans. "[B]ob told me flat out by next week the train leaves the station. Whoever is in is in.";

    h.    The registered address of Defendant SDG is identified as 617 11th Avenue, New York, New York 10036, which is the same address as Defendant SMG; and

    i.    However, on December 20, 2017, Defendant Harry Yioves instructed Plaintiff to route contracts for Scores Casino investors to the address of Defendant Scores Holding at 535 West 27th Street New York, NY 10001.

121.    Upon information and belief, Defendants Harry Yioves, Robert Gans, Scores Holding and SDG have acted in bad faith by breaching their contract with Plaintiff and for refusing to pay Plaintiff the compensation he has earned.

122.    In this action, Plaintiff seeks to recover compensation for the efforts he expended and the related damages he has suffered.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION
#### Breach of Contract
#### (As to the Scores Consultancy Agreement)

123.    Plaintiff repeats, realleges and reasserts the allegations set forth in the aforementioned paragraphs as if fully set forth herein.

124.    Plaintiff performed all conditions, covenants, and promises required to be performed by Plaintiff in accordance with the material terms and responsibilities of the Scores Consultancy Agreement.

125.    Plaintiff used his "unique expertise to manage, market, advertise and administer the Businesses to as to improve the Business's revenue and profits."

126.   In return, Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves promised to compensate Plaintiff through a monthly draw of $10,000.00 per month.

127.   In return, Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves also promised to pay quarterly share payments of 15% of Defendants net revenue from the leads generated by Plaintiff provided that the net revenue was greater than $30,000.00 per quarter.

128.   Payment of said Share would not affect Plaintiff's right and entitlement to be paid his monthly Draw.

129.   Notwithstanding Plaintiff's adherence to the Scores Consultancy Agreement, Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves breached the Consultancy Agreement by, among other things:

    a.   Withholding the $10,000 monthly draw;

    b.   Failing to provide the required written notice of termination; and

    c.   Refusing to provide Plaintiff with a single "share" payment despite Plaintiff's work to increase revenue through generating leads.

130.   As discussed above, while Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves claim the Business was not profitable, Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves organized the structure of the Defendant Scores entities in such a way as to avoid profit and, thus, avoid paying Plaintiff what he was owed pursuant to the Scores Consultancy Agreement.

131.   As a direct and proximate result of the breach of contract by Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves, Plaintiff has suffered, continues to suffer, and will continue to suffer, damages in an amount to be proven at trial.

## AS AND FOR A SECOND CAUSE OF ACTION
### Breach of Contract
### (As to the ScoresCasino.com Contract)

132.    Plaintiff repeats, realleges and reasserts the allegations set forth in the aforementioned paragraphs as if fully set forth herein.

133.    A contract between Plaintiff and Defendants Scores Holding, SDG, Robert Gans and Harry Yioves came into existence when Defendant Harry Yioves and Defendants Scores Holding, SDG and Robert Gans, through their agent/employee Defendant Harry Yioves, offered Plaintiff valid consideration in return for Plaintiff's performance with respect to ScoresCasino.com as outlined herein.

134.    Defendant Harry Yioves and Defendants Scores Holding, SDG and Robert Gans, through their agent/employee Defendant Harry Yioves, promised to compensate Plaintiff through, among other things, preferred stock shares, company equity and by starting him as a salaried employee at Scores Casino in exchange for Plaintiff finding and retaining investors for their business venture - ScoresCasino.com.

135.    Plaintiff performed all conditions, covenants, and promises required to be performed by Plaintiff in accordance with the terms and responsibilities of the contract between him and Defendants Scores Holding, SDG, Robert Gans and Harry Yioves.

136.    Plaintiff retained investors for Defendants Scores Holding, SDG, Robert Gans and Harry Yioves, including but not limited to, MonsterAds and Mr. Moser, for the purpose of benefitting Defendants Scores Holding, SDG, Robert Gans and Harry Yioves with respect to ScoresCasino.com.

137.   Despite their representations and contractual obligations, Defendants Scores Holding, SDG, Robert Gans and Harry Yioves did not compensate Plaintiff as promised for the work he performed with respect to ScoresCasino.com.

138.   Defendants Scores Holding, SDG, Robert Gans and Harry Yioves breached their contract with Plaintiff by failing to compensate him as promised for the work he performed with respect to ScoresCasino.com.

139.   As a direct and proximate result of Defendants' breach of contract, Plaintiff has suffered, continues to suffer, and will continue to suffer, damages in an amount to be proven at trial.

**AS AND FOR A THIRD CAUSE OF ACTION**
**Unjust Enrichment**
**(As to ScoresLive.com)**

140.   Plaintiff repeats, realleges and reasserts the allegations set forth in the aforementioned paragraphs as if fully set forth herein.

141.   Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves promised Plaintiff compensation for Plaintiff's work to benefit ScoresLive.com, which included a monthly draw of $10,000.00 per month and quarterly share payments of 15% of Defendants' net revenue from the leads generated by Plaintiff provided that the net revenue was greater than $30,000.00 per quarter.

142.   Plaintiff used his "unique expertise to manage, market, advertise and administer the Businesses to as to improve the Business's revenue and profits."

143.   As a result of Plaintiff's use of his "unique expertise to manage, market, advertise and administer the Businesses to as to improve the Business's revenue and profits," Defendants

Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves benefited monetarily with respect to ScoresLive.com.

144.    As discussed above, while Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves claim ScoresLive.com was not profitable, Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves organized the structure of the Defendant Scores entities in such a way as to avoid profit directly to SMG and, thus, were able to avoid paying Plaintiff the value of his contribution to SocresLive.com.

145.    Upon information and belief, at times when the Plaintiff was receiving a $10,000 monthly draw, some of his payments were made by Scores Holding, not SMG.

146.    Upon information and belief, the profit earned from ScoresLive.com that is attributed to the Plaintiff benefited Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves monetarily.

147.    Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves have been unjustly enriched to the detriment of Plaintiff Jeremy Greene.

148.    It is against equity and good conscience to permit Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves to retain amounts owed to Plaintiff.

149.    As a direct and proximate result of Plaintiff's reliance on Defendant's promises as aforesaid, Plaintiff has suffered, continues to suffer, and will continue to suffer, damages in an amount to be proven at trial.

## AS AND FOR A FOURTH CAUSE OF ACTION
### Unjust Enrichment
### (As to ScoresCasino.com)

150.    Plaintiff repeats, realleges and reasserts the allegations set forth in the aforementioned paragraphs as if fully set forth herein.

151.    Defendant Harry Yioves and Defendants Scores Holding, SDG and Robert Gans, through their agent/employee Defendant Harry Yioves, promised Plaintiff compensation for the work he performed for their benefit with respect to ScoresCasino.com.

152.    As described above, Plaintiff procured several investors for the "ScoresCasino.com" business for the substantial monetary benefit of Defendants Scores Holding, SDG, Robert Gans and Harry Yioves, including but not limited to MonsterAds and Mr. Moser.

153.    Notwithstanding Plaintiff's success in obtaining financial backers for ScoresCasino.com, Defendants Scores Holding, SDG, Robert Gans and Harry Yioves failed to compensate Plaintiff for the work performed.

154.    Defendants Scores Holding, SDG, Robert Gans and Harry Yioves have benefitted substantially from Plaintiff's work to the detriment of the Plaintiff who has not been compensated for his services.

155.    Representatives of MonsterAds and Mr. Moser have told Defendant Harry Yioves and Defendants Scores Holding, SDG and Robert Gans, through their agent/employee Defendant Harry Yioves, that Defendants Scores Holding, SDG, Robert Gans and Harry Yioves need to provide Plaintiff with substantial compensation for the work he performed for Defendants Scores Holding, SDG, Robert Gans and Harry Yioves in procuring them as investors.

156.    Representatives of MonsterAds and Mr. Moser have told Defendant Harry Yioves and Defendants Scores Holding, SDG and Robert Gans, through their agent/employee Defendant Harry Yioves, that they would not have invested substantial funds in ScoresCasino.com had it not been for the work of Plaintiff Jeremy Greene.

157.    It is against equity and good conscience to permit the Defendants to retain amounts owed to Plaintiff.

158.    As a direct and proximate result of Plaintiff's reliance on Defendant's promises as aforesaid, Plaintiff has suffered, continues to suffer, and will continue to suffer, damages in an amount to be proven at trial.

## AS AND FOR A FIFTH CAUSE OF ACTION
### Promissory Estoppel
### (As to the ScoresLive.com)

159.    Plaintiff repeats, realleges and reasserts the allegations set forth in the aforementioned paragraphs as if fully set forth herein.

160.    A clear and unambiguous promise was made by Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves to compensate Plaintiff for work he performed for their benefit with respect to ScoreLive.com including a monthly draw of $10,000.00 per month and quarterly share payments of 15% of Defendants' net revenue from the leads generated by Plaintiff provided that the net revenue was greater than $30,000.00 per quarter.

161.    Plaintiff reasonably and foreseeably relied on the promises made by Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves to him that he would not stop receiving the $10,000 per month draws without written notice of termination and that he would receive quarterly share payments of 15% of Defendants' net revenue from the leads generated by Plaintiff provided that the net revenue was greater than $30,000.00 per quarter.

162.    Plaintiff performed the work he promised to do for Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves with respect to ScoresLive.com.

163.    Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves failed to provide Plaintiff with written notice of termination of his $10,000 monthly draw as promised and instead simply stopped paying him.

164.    Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves failed to provide Plaintiff with his quarterly share payments of 15% of Defendants' net revenue from the leads generated by Plaintiff provided that the net revenue was greater than $30,000.00 per quarter.

165.    As a direct and proximate result of Plaintiff's reliance on the promises made by Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves as aforesaid, Plaintiff has suffered, continues to suffer, and will continue to suffer, damages in an amount to be proven at trial.

### AS AND FOR A SIXTH CAUSE OF ACTION
### Promissory Estoppel
### (As to ScoresCasino.com)

166.    Plaintiff repeats, realleges and reasserts the allegations set forth in the aforementioned paragraphs as if fully set forth herein.

167.    A clear and unambiguous promise was made by Harry Yioves and Defendants Scores Holding, SDG and Robert Gans, through their agent/employee Defendant Harry Yioves, to compensate Plaintiff for work he performed for their benefit with respect to ScoresCasino.com including, but not limited to, compensation in the form of preferred stocks, company equity and a job as a salaried employee for Scores Casino.

168.    Plaintiff reasonably and foreseeably relied on statements made by Defendant Harry Yioves and Defendants Scores Holding, SDG and Robert Gans, through their agent/employee Defendant Harry Yioves, that Plaintiff would receive compensation, including, but not limited to, compensation in the form of preferred stocks, company equity and a job as a salaried employee for Scores Casino, once Plaintiff secured financial investors for them.

169.    Plaintiff worked exclusively for Defendants Scores Holding, SDG, Robert Gans and Harry Yioves for years with respect to ScoresCasino.com without receiving the promised compensation or income from them.

170.    Once Plaintiff secured financial investors for Defendants Scores Holding, SDG, Robert Gans and Harry Yioves, including but not limited to MonsterAds and Mr. Moser, Defendant Harry Yioves and Defendants Scores Holding, SDG and Robert Gans, through their agent/employee Defendant Harry Yioves, continued to promise payment to Plaintiff while making excuses for the delay.

171.    For example, Harry Yioves' November 29, 2017 message to Plaintiff provides:

> "Yea after we get all signed off and that part is
> behind us I want you to do a cake session. Get
> caught up. So you can be a part of operations."

172.    It soon became clear that Defendants Scores Holding, SDG, Robert Gans and Harry Yioves had no intention to compensate Plaintiff after Plaintiff delivered the investors to them.

173.    Plaintiff performed a significant amount of work on behalf of Defendants Scores Holding, SDG, Robert Gans and Harry Yioves with respect to ScoresCasino.com for which he was not compensated.

174.    Plaintiff paid money out of his own pocket to perform the work on behalf of Defendants Scores Holding, SDG, Robert Gans and Harry Yioves with respect to ScoresCasino.com for which he was not reimbursed.

175.    As a direct and proximate result of Plaintiff's reliance on Defendant's promises as aforesaid, Plaintiff has suffered, continues to suffer, and will continue to suffer, damages in an amount to be proven at trial.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### Fraudulent Inducement
### (ScoresLive.com)

176.    Plaintiff repeats, realleges and reasserts the allegations set forth in the aforementioned paragraphs as if fully set forth herein.

177.    At all relevant times, in return for work performed by Plaintiff with respect to ScoresLive.com, Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves promised Plaintiff that he would receive quarterly share payments of 15% of Defendants' net revenue from the leads generated by Plaintiff provided that the net revenue was greater than $30,000.00 per quarter.

178.    Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves made this promise to Plaintiff in order to induce the Plaintiff to perform work for them with respect to SoresLive.com.

179.    Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves never intended to make quarterly share payments to Plaintiff of 15% of Defendants' net revenue from the leads generated by Plaintiff provided that the net revenue was greater than $30,000.00 per quarter.

180.    While Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves claim the Business was not profitable, Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves organized the structure of the Defendant Scores entities in such a way as to avoid profit and, thus, avoid paying Plaintiff with any quarterly share payments of 15% of Defendants net revenue from the leads generated by Plaintiff for ScoresLive.com provided that the net revenue was greater than $30,000.00 per quarter.

181.    Defendants knew at the time they promised Plaintiff quarterly share payments of 15% of Defendants' net revenue from the leads generated by Plaintiff for ScoresLive.com that he would never receive such payments given the manner in which they organized the Defendant Scores entities.

182.    Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves knew that the promises and representations they were making to the Plaintiff were false in that they never had any intention of paying Plaintiff quarterly share payments of 15% of Defendants' net revenue from the leads generated by Plaintiff provided that the net revenue was greater than $30,000.00 per quarter.

183.    Plaintiff Jeremy Greene reasonably relied upon the statements and promises made by Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves and performed work for them with respect to SoresLive.com.

184.    As a direct and proximate result of Plaintiff's reliance on Defendant's promises as aforesaid, Plaintiff has suffered, continues to suffer, and will continue to suffer, damages in an amount to be proven at trial.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
### Fraudulent Inducement
### (ScoresCasino.com)

185.    Plaintiff repeats, realleges and reasserts the allegations set forth in the aforementioned paragraphs as if fully set forth herein.

186.    At all relevant times, Defendant Harry Yioves and Defendants Scores Holding, SDG and Robert Gans, through their agent/employee Defendant Harry Yioves, promised and/or assured Plaintiff that if Plaintiff procured financial investors for ScoresCasino.com, Plaintiff would receive compensation as discussed herein.

187.    Based on these promises and assurances from Defendant Harry Yioves and Defendants Scores Holding, SDG and Robert Gans, through their agent/employee Defendant Harry Yioves, Plaintiff worked for years to bring in investment partners on behalf of ScoresCasino.com without the promised compensation.

188.    When Plaintiff pressed Defendant Harry Yioves and Defendants Scores Holding, SDG and Robert Gans, through their agent/employee Defendant Harry Yioves, about his promised compensation, Defendant Harry Yioves and Defendants Scores Holding, SDG and Robert Gans, through their agent/employee Defendant Harry Yioves, promised and/or assured Plaintiff that Plaintiff would receive payment in the near future for the work he performed.

189.    On November 22, 2016, Defendant Harry Yioves and Defendants Scores Holding, SDG and Robert Gans, through their agent/employee Defendant Harry Yioves, wrote to Plaintiff regarding compensation: "Don't worry when I say your [sic] going to be good your [sic] going to be good."

190.    On December 21, 2016, Defendant Harry Yioves and Defendants Scores Holding, SDG and Robert Gans, through their agent/employee Defendant Harry Yioves, wrote to Plaintiff, "factoring in your cut."

191.    Plaintiff continued to work for Defendants Scores Holding, SDG, Robert Gans and Harry Yioves with respect to ScoresCasino.com based on their promises and reassurances.

192.    Defendants Scores Holding, SDG, Robert Gans and Harry Yioves repeatedly delayed payment of Plaintiff's compensation.

193.    For example, on August 2, 2017, when Plaintiff asked Defendant Harry Yioves and Defendants Scores Holding, SDG and Robert Gans, through their agent/employee Defendant

Harry Yioves, when he would be placed on payroll, Defendant Harry Yioves responded on behalf of himself and Defendants Scores Holding, SDG and Robert Gans as follows:

> Let's see how this goes with David. That will give
> you quick relief. And then we can get u [sic] on a
> plan for ongoing.

194.    Upon information and belief, Defendants Scores Holding, SDG, Robert Gans and Harry Yioves purposely delayed the launch of ScoresCasino.com to receive free labor from Plaintiff.

195.    Defendants Scores Holding, SDG, Robert Gans and Harry Yioves never had any intention of compensating Plaintiff for the work he performed on their behalf with respect to ScoresCasino.com.

196.    Defendant Harry Yioves and Defendants Scores Holding, SDG and Robert Gans, through their agent/employee Defendant Harry Yioves, represented that Plaintiff would be compensated by them because it was their intent to induce the Plaintiff to perform free work for them with respect to ScoresCasino.com.

197.    Defendant Harry Yioves and Defendants Scores Holding, SDG and Robert Gans, through their agent/employee Defendant Harry Yioves, knew that the promises and representations they were making to the Plaintiff were false in that they never had any intention of compensating Plaintiff for the work he performed on their behalf with respect to ScoresCasino.com.

198.    Plaintiff Jeremy Greene reasonably relied upon the statements and promises made by Defendant Harry Yioves and Defendants Scores Holding, SDG and Robert Gans, through their agent/employee Defendant Harry Yioves.

199.    The statements and promises made by Defendant Harry Yioves and Defendants Scores Holding, SDG and Robert Gans, through their agent/employee Defendant Harry Yioves,

induced the Plaintiff Jeremy Greene to perform work on their behalf with respect to ScoresCasino.com.

200.    After repeatedly asking Defendant Harry Yioves and Defendants Scores Holding, SDG and Robert Gans, through their agent/employee Defendant Harry Yioves, when he would receive his promised compensation and never receiving it, it became clear to Plaintiff that Defendants Scores Holding, SDG, Robert Gans and Harry Yioves had never intended to compensate him for the work that he performed at  their request and on their behalf.

201.    As a direct and proximate result of Plaintiff's reliance on Defendant's promises as aforesaid, Plaintiff has suffered, continues to suffer, and will continue to suffer, damages in an amount to be proven at trial.

### AS AND FOR A NINTH CAUSE OF ACTION
### Breach of Implied Duty of Good Faith and Fair Dealing
### (ScoresLive.com)

202.    Plaintiff repeats, realleges and reasserts the allegations set forth in the aforementioned paragraphs as if fully set forth herein.

203.    At all relevant times, Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves knew that they had a duty to pay Plaintiff $10,000.00 per month and to make quarterly share payments to Plaintiff of 15% of Defendants' net revenue from the leads generated by Plaintiff for ScoresLive.com provided that the net revenue was greater than $30,000.00 per quarter.

204.    At all relevant times, Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves knew they had a duty to provide Plaintiff with written notice of their termination of their agreement with respect to ScoresLive.com.

205.    Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves knew that they were violating their agreement with Plaintiff when they stopped paying him $10,000.00 per month without providing him with written notification.

206.    Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves knew that they were violating their agreement with Plaintiff when they failed to provide Plaintiff with any quarterly share payments of 15% of Defendants net revenue from the leads generated by Plaintiff for ScoresLive.com provided that the net revenue was greater than $30,000.00 per quarter.

207.    While Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves claim the Business was not profitable, Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves organized the structure of the Defendant Scores entities in such a way as to avoid profit and, thus, avoid paying Plaintiff with any quarterly share payments of 15% of Defendants net revenue from the leads generated by Plaintiff for ScoresLive.com provided that the net revenue was greater than $30,000.00 per quarter.

208.    Defendants knew at the time they promised Plaintiff quarterly share payments of 15% of Defendants' net revenue from the leads generated by Plaintiff for ScoresLive.com that he would never receive such payments given the manner in which they organized the Defendant Scores entities.

209.    Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves violated the covenant of good faith and fair dealing when they stopped paying Plaintiff $10,000.00 per month without providing him with written notification.

210.    Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves violated the covenant of good faith and fair dealing when they failed to provide Plaintiff with any

quarterly share payments of 15% of Defendants' net revenue from the leads generated by Plaintiff for ScoresLive.com provided that the net revenue was greater than $30,000.00 per quarter.

211.   Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves did not take any action or necessary steps to minimize the damage sustained by Plaintiff as a result of their actions.

212.   Plaintiff has suffered, continues to suffer, and will continue to suffer, damages in an amount to be proven at trial as a direct and proximate result of the breach of the covenant of good faith and fair dealing by Defendants Scores Holding, Scores Media, SMG, Robert Gans and Harry Yioves.

**AS AND FOR A TENTH CAUSE OF ACTION**
**Breach of Implied Duty of Good Faith and Fair Dealing**
**(ScoresCasino.com)**

213.   Plaintiff repeats, realleges and reasserts the allegations set forth in the aforementioned paragraphs as if fully set forth herein.

214.   At all relevant times, Defendants Scores Holding, SDG, Robert Gans, and Harry Yioves knew they had promised to provide compensation to Plaintiff for work he did in procuring investors for ScoresCasino.com, compensation which included, but was not limited to, a job as a salaried employee for Scores Casino, preferred stock shares and company equity.

215.   Defendants Scores Holding, SDG, Robert Gans and Harry Yioves knew that they were violating their agreement and the promises they made to Plaintiff when they failed to provide Plaintiff with any of the compensation he was promised.

216.   Defendants Scores Holding, SDG, Robert Gans and Harry Yioves violated the covenant of good faith and fair dealing when they failed to provide Plaintiff with any of the compensation he was promised.

217.    Defendants Scores Holding, SDG, Robert Gans and Harry Yioves did not take any action or necessary steps to minimize the damage sustained by Plaintiff as a result of their actions.

218.    Plaintiff has suffered, continues to suffer, and will continue to suffer, damages in an amount to be proven at trial as a direct and proximate result of the breach of the covenant of good faith and fair dealing by Defendants Scores Holding, SDG, Robert Gans and Harry Yioves.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against the Defendants on each of the above-referenced claims and Causes of Action and as follows:

1. For any and all causes of action and/or claims as may be compensable under local laws and/or statutes as may apply under the laws in the jurisdiction and venue in which this case may be transferred for trial;

2. Awarding compensatory damages to Plaintiff for past and future damages, including both economic and non-economic damages, together with interest and costs as provided by law;

3. Punitive and/or exemplary damages for the intentional, wanton, willful, fraudulent, reckless, and/or grossly negligent acts of Defendants, who demonstrated a profound disregard and reckless indifference for the Plaintiff, in an amount sufficient to punish Defendants and deter future similar conduct;

4. Awarding Plaintiff reasonable attorneys' fees;

5. Awarding Plaintiff the cost of these proceedings; and

6. Such other and further relief as this Court deems just and proper.

Dated:  July 1, 2019
     New York, New York                _/s/ Michael A. London_____
                                        MICHAEL A. LONDON (ML-7510)
                                        VIRGINIA E. ANELLO (VA-8197)
                                        DOUGLAS & LONDON, P.C.
                                        59 Maiden Lane, 6th Floor
                                        New York, New York 10038
                                        Ph:  (212) 566-7500
                                        Fax: (212) 566-7501
                                        Email: mlondon@douglasandlondon.com

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury as to all issues.

Dated:          July 1, 2019
                New York, New York

                                        _/s/ Michael A. London_____
                                        MICHAEL A. LONDON (ML-7510)
                                        DOUGLAS & LONDON, P.C.
                                        59 Maiden Lane, 6th Floor
                                        New York, New York 10038
                                        Ph:  (212) 566-7500
                                        Fax: (212) 566-7501
                                        Email: mlondon@douglasandlondon.com

                                        **ATTORNEYS FOR PLAINTIFFS**